UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                        Case No. 02-80756

CHILAKAMARRI RAMESH,               Honorable Julian Abele Cook, Jr.

        Defendant.


<u>ORDER</u>

On October 14, 2008, a grand jury returned a superceding indictment which charged the Defendant, Chilakamarri Ramesh, with one count of conspiring to commit naturalization fraud, in violation of 18 U.S.C. §1425, and eight counts of aiding and abetting in the unlawful procurement of citizenship or naturalization, contrary to the provisions of 18 U.S.C. §§ 371 and 2, respectively.

Nearly two weeks later (October 28, 2008), he proffered a motion to dismiss the conspiracy charge in count one of the superseding indictment based on the strength of his belief that the limitation period for this alleged criminal offense had expired. On the same day, he filed a renewed motion for bill of particulars, pointing to his entitlement to receive the "specific patients, certification forms, and false statements giving rise to its charges" from the Government. On February 12, 2009, Ramesh filed a third motion, in which he sought to obtain the discovery of (1) the personnel files of those Immigration and Naturalization Service ("INS") officers who had reviewed the disability certifications which had been allegedly falsified by him, as well as (2) the

1

specific criteria that had been applied by the INS officers in determining (a) whether a naturalization applicant should pass the English-language proficiency test, (b) the quality of the medical diagnoses and opinions within the disability certifications, and (c) the alleged falsity of the disability certifications.   The Government has filed timely responses in opposition to all of Ramesh's motions.

## I.

This criminal action began on August 21, 2002 when the grand jury, having been convened at the behest of  the Government, returned an indictment against Ramesh, in which it accused him of conspiring  to defraud the United States, in violation of 18 U.S.C. § 371 by seeking to evade certain immigration laws regarding naturalization, in contravention of 18 U.S.C. §§ 1425 and 1546. In its indictment, the grand jury charged Ramesh, a licensed medical doctor and psychiatrist in Michigan, with participating in a conspiracy to obtain unlawful citizenships for his patients. The Government contends that he falsely certified and submitted disability certification forms (i.e., N-648 forms) to the INS for the purpose of having his patients exempted from a mandatory testing requirement for naturalization; namely, an English-language proficiency exam.[1]

On October 14, 2008, a first superseding indictment was returned by the grand jury, in which it added eight counts of criminal conduct by Ramesh to its original charge of conspiracy; i.e., aiding and abetting in the unlawful procurement of citizenship or naturalization., in violation of 18

---

[1] 8 U.S.C. § 1423(a) requires that an applicant for naturalization successfully demonstrate (1) an understanding of the English language and (2) a knowledge and understanding of the fundamentals of United States history.

8 U.S.C. § 1423(b)(1) exempts from these tests "any person who is unable because of physical or developmental disability or mental impairment to comply."

U.S.C. §§ 371 and 2, respectively. In addition, although the original indictment specifically described thirteen fraudulent certification forms, the superseding indictment detailed seven specific N-648s disability waivers. The superseding indictment also included the following additional language:

> In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed by CHILAKAMARRI RAMESH, M.D. in the Eastern District of Michigan and elsewhere. In total, between September 1998 and August 2002, CHILAKAMARRI RAMESH, M.D. knowingly signed approximately 953 false and fraudulent N-648s on behalf of approximately 492 citizenship applicants located in or near Dearborn, Cleveland, St.Louis, and Chicago. These N-648s falsely claimed that CHILAKAMARRI RAMESH, M.D. performed mental evaluations on these applicants and falsely certified that these applicants had mental defects – primarily mental retardation, posttraumatic stress disorder, learning disabilities, and/or dementia – rendering them exempt from the English-language requirement for naturalization. Among these N-648s, without limitation, were the following [seven specific N-648s] . . . .

## II.

In his motion to dismiss, Ramesh contends that the charge in the first superseding indictment is time barred. He argues that the first superseding indictment improperly broadens the original indictment, and does not relate back for purposes of tolling the statute of limitations. The Government, on the other hand, asserts that (1) the reference in the original indictment to "thirteen patients among others" put Ramesh on notice of other criminal acts to be proven at trial, (2) he, through his counsel, had notice of the scope of the claimed conspiracy on the basis of the documents that it made available to him, (3) Ramesh, during a post-*Miranda* interview, acknowledged that it was possible that he had completed over 800 INS medical waivers, and (4) it, as the charging entity, is not required to itemize every overt act that was allegedly committed in furtherance of a conspiracy in the indictment.

In 2006, the Sixth Circuit Court of Appeals reiterated the long-standing rule that "as long

3

as [a] superseding indictment does not broaden the original indictment, the superseding indictment relates back to the filing of the original indictment even if the superseding indictment is filed outside of the statute of limitations." *United States v. Watford*, 468 F.3d 891, 908 (6th Cir. 2006) (quoting *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999) (internal citation omitted)).  An indictment is broadened when the government, the court, or both, enlarge the possible bases under which a defendant may be convicted beyond the charges returned by the grand jury.  *Id.* Furthermore, in seeking to determine if a superseding indictment improperly broadens the original indictment, the touchstone is whether the defendant has been afforded with adequate notice of the charges so that a defense against the additional charge may be prepared.  *Smith*, 197 F.3d at 229 (citing *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976)).

Ramesh's motion to dismiss fails for several reasons.  First, the Government has not changed (1) the names of the alleged co-conspirators, (2) the date of the alleged  conspiracy, (3) the nature of the alleged conspiracy, or (4) the manner in which the alleged conspiracy was performed.  The similitude of the indictments with respect to these factors is significant.  *See Lash*, 1081-82 (superseding indictment did not broaden charges where "[t]he dates of the conspiracy remain the same, as do the names of the conspirators and the nature and offices of the operations alleged."); *see also, United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986) (superseding indictment related back where "the theory of the case was not changed, the defendant was not charged with a different substantive crime, and the elements of the crime charged were not altered").

In addition, even if the relevant facts in the original indictment are different from those in the superseding indictment, Ramesh has had adequate notice of the scope of the alleged conspiracy

4

that the Government is relying upon for the purpose of prosecution.  Moreover, Ramesh - through

his attorney - has acknowledged having received a list of (1) twenty four pages which identifies the

applicants and their file numbers, and (2) those persons who provided the INS with sworn

statements.[2]  These lists presumably include all of the 492 applicants for whom Ramesh is alleged

to have fraudulently completed a disability waiver.  In addition, the Government has provided him

with the statements that were made by nearly fifty citizenship applicants and various alleged co-

conspirators.

Notwithstanding, Ramesh submits that this file is not sufficient for purposes of notice

because he is unable to know how many of those hundreds of applicants are relevant to his case.[3]

Even if this contention is true, the Government claims - without challenge - that Ramesh was given

a copy of a 2003 summary report of its investigation in this criminal action over six years ago in

which he was identified as the "main doctor signing the Medical waiver (N-648)" out of the "over

one thousand medical waiver[s] (–648) . . . completed by doctors from 4As Hope[, the center whose

address was listed on the INS forms and where Ramesh purportedly examined his patients]. . . ."

Thus, even though the scope of the alleged conspiracy may not have been detailed in the original

indictment, the Court believes that this material has provided Ramesh with a sufficient notice of

its charges against him.  *See United States v. Garcia*, 268, F.3d 407, 411 (6th Cir. 2001)

(superseding indictment related back where defendant had notice of additional kilograms of drugs

---

[2]Ramesh's counsel acknowledged receipt of this list in a letter dated September 10, 2002.

[3]Ramesh claims that a shorter version of the list, which only contained those certification forms that were alleged to have been falsely certified by Ramesh would have satisfied the notice requirement.  However, it is his contention that such an effort would have been  inapplicable to toll the statute of limitations because the information was provided by the Government on August 1, 2008 - nearly two years after the expiration of the statute of limitations.

provided in written document separate from indictment).

Furthermore, it is well-settled that the Government need not allege in the indictment all of the overt acts that were performed in furtherance of the alleged conspiracy. *United States v. Lash*, 937 F.2d 1077, 1081 (6th Cir. 1991).

Finally, Ramesh has pointed to *United States v. Radcliff*, 245 F.3d 1246 (11th Cir. 2001) which, in his opinion, support his position on the issue of dismissal. However, the Court disagrees, in that it believes that *Radcliff*, in actuality, supports the Government's argument. Although the *Radcliff* Court determined that the superseding indictment had broadened the charges in the original indictment, it noted that "[t]he most obvious difference, and the primary one appearing on the face of the indictments, is the change in the time period of the alleged conspiracies - a change which expanded the length of the conspiracies by at least twelve years." 245 F.3d at 1253-54.

Unlike *Radcliff*, the relevant dates in the original indictment and the superceding indictment in this case have remained the same. Moreover, the *Radcliff* Court found it significant that (1) the number of co-conspirators in the superseding indictment increased from five to fifteen and (2) the smuggling ventures also increased from one to eight. Here, not only did Ramesh have notice of the scope of the alleged conspiracy, as discussed *supra*, but the number of co-conspirators has actually decreased from seven to three and the superseding indictment involves the same criminal venture. Thus, Ramesh's request to dismiss the charges in count one of the superseding indictment must be, and is, denied.

III.

In his motion for bill of particulars, Ramesh asks the Court to require the Government to identify (1) the specific patients, (2) the certification forms, and (3) the false statements which

6

allegedly gave rise to its charges against him.  The Government submits that it has already provided

him with "a 24 page list of alien files," as well as a list of those "individuals who gave a sworn

statement to the INS" years ago.  It should also be noted that these "alien files" ostensibly contain

the 953 disability waivers which, according to the Government, were fraudulently executed by

Ramesh.

Federal Rule of Criminal Procedure 7(f) provides, in part, that "[t]he defendant may move

for a bill of particulars before or within 10 days after arraignment or at a later time if the court

permits."  The purpose of a bill of particulars is to notify the defendant of the charges levied against

him (1) so he may prepare his defense against the criminal accusations, (2) to avoid prejudicial

surprise at trial, and (3) to enable him to plead his acquittal or conviction in bar of another

prosecution for the same offense "when the indictment itself is too vague, and indefinite for such

purposes."  *United States v. Brimley*, 529 F.2d 103, 108 (6th Cir. 1976) (citing *United States v.

Haskins*, 345 F.2d 111 (6th Cir. 1965)).  A bill of particulars is not a means to "'learn[] the

government's evidence and theories.'" *United States v. Musick*, 291 Fed. Appx. 706, 724 (6th Cir.

2008).  It should also be noted that the defendant is not entitled to a bill of particulars for the

purpose of obtaining a list of the Government's witnesses "or to discover all the overt acts that

might be proven at trial."  *Id.*

In its pending bill of particulars, Ramesh has asked the Court to compel the Government

to provide answers to the following requests:

    1. Identify by name, birth date, and country of origin each of the 492 citizenship
    applicants on whose behalf Dr. Ramesh allegedly conspired to commit naturalization
    fraud as set forth in Count One of the First Superseding Indictment.

    2. Identify by applicant name and execution date each of the 953 disability
    certifications prepared by Dr. Ramesh which allegedly contained false statements as

7

set forth in Count One of the First Superseding Indictment.

3. Identify by direct quotation each specific statement in each of the 953 disability certifications prepared by Dr. Ramesh which were allegedly false as set forth in Count One of the First Superseding Indictment.

After receiving the Government's response and attached exhibits, Ramesh "acknowledges that these spreadsheets satisfy the first and second requests for information set forth in his motion for bill of particulars." On the basis of this acknowledgment, the first two of Ramesh's requests will be denied for reasons of mootness.

Ramesh's request for the third item mentioned above must be denied as well. On March 10, 2005, the Court denied Ramesh's initial motion for a bill of particulars after concluding that the information which had been provided by the Government was sufficient to apprise him of the pending charges and virtually eliminate any reasonable probability of being prejudicially surprised at trial.   At that juncture in the litigation, the Government had provided him with a list of "alien files" as well as a roster of persons who had given the INS sworn statements.

Now, a review of the current posture of this case reveals that Ramesh possesses the same twenty-four page list of files as well as a designation of the 492 applicants and the 953 certifications that are referenced in the first superseding indictment.   Although Ramesh contends that "the case is now in a much different posture," he has neither expanded upon this declaration nor explained how the March 2005 decision should be modified.

In addition, the Government has asserted that "the medical diagnosis (and purported basis thereof) in each N-648 is fraudulent."   According to the Government, Ramesh has had access to each medical waiver form (i.e., N-648) for over six years which should (1) assist him in preparing his defense, (2) prevent an unfair surprise at trial, and (3) allow him to preclude any subsequent prosecution for the same offense.   As such, Ramesh's renewed motion for bill of particulars must

8

be, and is, denied.

IV.

Ramesh also requests that the Government provide him with the following items:

1.. The personnel files demonstrating the credentials, training, employment history, and disciplinary record of each INS officer who reviewed any disability certification which Dr. Ramesh allegedly falsified.

2. The specific criteria used by INS in determining whether a citizenship applicant passes the English-language proficiency test required for naturalization.

3. The specific criteria used by INS in assessing the validity of the medical diagnosis and exemption opinion contained in a disability certification.

4. The specific criteria used by INS in determining whether a disability certification is fraudulent.

In response, the Government urges the Court to reject Ramesh's motion for the following three reasons: (1) his attorney failed to seek concurrence pursuant to the mandatory provisions of Local Rule 7.1(a), (2) noting that approximately six and a half years have transpired since the commencement of this criminal action, Ramesh has been derelict in attempting to seek this information which he now deems to be pivotal to his case, and (3) the discovery sought by him is "wholly immaterial" to the Government's case and his defense.

There is a specific provision within the Federal Rules of Criminal Procedure which provides, in part, that upon the request of a defendant, the government must allow him to inspect, copy or photograph documents or objects "if the item is within the government's possession, custody or control" and, more importantly as it relates to Ramesh's pending motion, "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). In order to establish the materiality of a sought-after document, "the defendant must

9

show that the pretrial disclosure of the material would enable the accused to substantially alter the quantum of proof." *United States v. Campbell*, 2008 U.S. Dist. LEXIS 94080, at *3 (E.D. Mich. 2008) (internal citations omitted).

In this case, Ramesh's motion must be rejected for procedural and substantive reasons. First, the Government has alleged - and Ramesh has acknowledged - that he did not seek concurrence before filing the instant motion, as required by E.D. Mich. LR 7.1(a)(1).[4]  Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District. Inasmuch as Ramesh has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that he seeks to obtain.

However, even if Ramesh had complied with this mandate, his motion is also substantively deficient.  An examination of the items that Ramesh requests from the Government reveal that he has not met his burden of showing how this information would be material to his case.  As the Government correctly notes, the superseding indictment has charged Ramesh with conspiring to and knowingly "submitting falsified documents and making fraudulent representations to the Immigration and Naturalization Service . . . ."  In his rationale for making this request, Ramesh declares that if an INS officer accepted the disability certifications which had been allegedly completed by Ramesh, then it makes "it more likely that [his medical] diagnoses were legitimate." However, evidence that an INS officer may have accepted a document, which is a facially legitimate certification form, during the naturalization process is immaterial to the ultimate question as to whether it is, or is not, fraudulent.  While this may have some relationship to the case, it does

---

[4]E.D. Mich. LR 7.1(a)(1) provides that "[t]he movant must ascertain whether the contemplated motion . . . will be opposed."  This Local Rule is made applicable to criminal cases through E.D. Mich. LCrR 12.1(a).

not rise to the level of materiality that is required for him to obtain the relief sought by him.

Therefore, Ramesh's request for discovery is denied.

V.

Accordingly, for the reasons stated above, the Court, must, and does, deny (1) Ramesh's motion to dismiss count one of the superseding indictment, (2) Ramesh's motion for a bill of particulars, and (3) Ramesh's motion for discovery.

IT IS SO ORDERED.

Dated:  March 26, 2009    s/Julian Abele Cook, Jr.
        Detroit, Michigan              JULIAN ABELE COOK, JR.
                                       United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 26, 2009.

                                       s/ Kay Doaks
                                       Case Manager